IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS HOUSTON DIVISION

| | | |
|---|---|---|
| CLARENCE EVANS, *Plaintiff,* | § § § | |
| v. | § | CIVIL ACTION NO. 4:22-CV-2508 |
| MARK HERMAN, *Defendant.* | § § § § | |

## MEMORANDUM AND RECOMMENDATION

Pending before the Court in this civil rights case is Defendant Mark Herman's ("Defendant's") Motion to Dismiss Plaintiff's First Amended Complaint based on qualified immunity. ECF 16.[1] Having considered the parties' submissions and the law, the Court RECOMMENDS that the Motion be DENIED.

### I. Background

Plaintiff Clarence Evans ("Plaintiff") alleges that Defendant, a Constable with Harris County Precinct Four Constable's Office (ECF 12 at ¶ 27), violated Plaintiff's First Amendment rights by restricting the expression of his viewpoint on a "public government [Facebook] page" ("Precinct 4 Facebook page"). *Id.* at ¶¶ 13, 16, 18. Plaintiff alleges that Defendant established the Precinct 4 Facebook page as an "interactive space" and "designated public forum" used to publicize case-related information. *Id.* at ¶¶ 12, 14, 19.

---

[1] The District Judge referred this case to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(A) and (B), the Cost and Delay Reduction Plan under the Civil Justice Reform Act, and Federal Rule of Civil Procedure 72. ECF 6.

The viewpoint discrimination of which Plaintiff complains stems from the deletion of his comments on the Precinct 4 Facebook page in which he disputed the Constable's Office version of events regarding his May 8, 2019 detention.  According to Plaintiff's First Amended Complaint, he was detained on that date under false pretenses and later filed suit against the arresting officer.  *Id.* at ¶¶ 1-5, 12.  Also according to Plaintiff's First Amended Complaint, Defendant responded publicly to Plaintiff's lawsuit by posting Precinct Four's own version of the facts and defending the arresting officer's actions.  *Id.* at ¶¶ 12, 22.  In a comment posted on the Precinct 4 Facebook page post, Plaintiff refuted the account of the incident posted by Defendant.  *Id.* at ¶ 13.  Defendant deleted Plaintiff's comments from the Precinct 4 Facebook page.  *Id.*  Plaintiff made additional posts which he claims Defendant also deleted, with the last deletion occurring on June 22, 2020.  *Id.* at ¶ 22.  Plaintiff alleges Defendant ultimately "blocked" Plaintiff from the Precinct 4 Facebook page based on his viewpoint and as a result he is prevented from reviewing, commenting on, or participating in the forum.  *Id.* at ¶¶ 17-18.

Plaintiff plausibly alleges that Defendant engaged in impermissible viewpoint discrimination on the Precinct 4 Facebook page.  First, Plaintiff alleges that Defendant and Precinct 4 operate the page to facilitate "discussions" in "public thread[s]" related to work performed by Defendant's office.  *Id.* at ¶¶ 16-17.  Plaintiff and other members of the general public expressed opinions on the page, and some made critical comments in response to Defendant's posts.  *Id.* at ¶ 13.  In response, Defendant allegedly deleted these critical comments based only on his disagreement with the critical opinions expressed in the posts.  *Id.* at ¶ 14.  Plaintiff further alleges that Defendant has denied access to those

2

who attempt to "inform the public" of case-related developments that reflect negatively on Defendant and Precinct 4. *Id.* at ¶ 21. Consistent with that practice, Defendant allegedly blocked Plaintiff from the forum "because of opinions he expressed in replying to [Defendant's] comments on the public thread" about his arrest. *Id.* at ¶ 16.

The current lawsuit was initiated on June 3, 2022, when Plaintiff filed an original petition in the 157th Judicial District Court of Harris County, Texas, alleging the infringement of his First Amendment Rights in violation of the Civil Rights Act, 42 U.S.C. § 1983. ECF 1-5 at 4. Defendant removed the case to the United States District Court for the Southern District of Texas on July 28, 2022. ECF 1. On September 9, 2022, Plaintiff filed an Amended Complaint naming Defendant in his individual and official capacities. ECF 12 at ¶ 12. Plaintiff seeks damages (*id.* at ¶ 48) and an injunction requiring Defendant to "unblock [Plaintiff's] accounts" as well as "all other accounts that have been blocked" from the Constable's Facebook and Twitter accounts, "except where Mark Herman can justify the blocking on an individualized basis." *Id.* at ¶ 18. Defendant now moves to dismiss claims brought against him in his individual capacity under Federal Rule of Civil Procedure 12(b)(6), arguing that those claims against him are barred by qualified immunity. ECF 16 at 2.

## II. Legal Standards

### A. Rule 12(b)(6) Standards

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content

3

that allows the court to draw the reasonable inference that the defendant is liable for the conduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009). In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), this Court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff. *Alexander v. AmeriPro Funding, Inc.*, 48 F.3d 68, 701 (5th Cir. 2017) (citing *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)). However, the court does not apply the same presumption to conclusory statements or legal conclusions. *Iqbal*, 556 U.S. at 678-79.

### B. Qualified Immunity Standards

"When a defendant asserts a qualified immunity defense in a motion to dismiss, the court has an 'obligation to carefully scrutinize the complaint before subjecting public officials to the burdens of broad-reaching discovery.'" *Longoria Next Friend of M.L. v. San Benito Indep. Sch. Dist.*, 942 F.3d 258, 263-64 (5th Cir. 2019) (quoting *Jacquez v. Procunier*, 801 F.2d 789, 791 (5th Cir. 1986). The doctrine of qualified immunity is an immunity from suit, not a mere defense to liability, and therefore should be decided at the earliest possible stage in litigation. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991). "When a defendant invokes qualified immunity [in a 12(b)(6) Motion], the burden is on the plaintiff to demonstrate the inapplicability of the defense." *Ramirez v. Guadarrama*, 3 F.4th 129, 133 (5th Cir. 2021) (quoting *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (per curiam)). A defendant is entitled to qualified immunity if his "conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Longoria*, 942 F.3d at 264 (citation omitted).

**III.   Defendant is not entitled to Rule 12(b)(6) dismissal of Plaintiff's § 1983 claims based on qualified immunity.**

In order to avoid dismissal on qualified immunity grounds of the section 1983 claims brought against Defendant in his individual capacity, Plaintiff must allege the violation of a constitutional right that was clearly established at the time of the alleged misconduct. *Morrow v. Meachum*, 917 F.3d 870, 874 (5th Cir. 2019). As explained below, Plaintiff's First Amended Complaint alleges a violation of a constitutional right—the right to be free from viewpoint discrimination on a government-created forum—which was clearly established at the time of the alleged conduct.

**A. Plaintiff's Amended Complaint alleges the violation of a constitutional right.**

To begin with, Plaintiff's Amended Complaint clearly alleges Defendant violated his First Amendment right to be free from viewpoint discrimination on a government-created forum when Defendant deleted Plaintiff's posts and blocked him from the Precinct 4 Facebook page. "[A]s an initial matter a speaker must seek access to public property or to private property dedicated to public use to evoke First Amendment concerns . . . ." *Cornelius v. NAACP Legal Defense & Educ. Fund, Inc.*, 473 U.S. 788, 801 (1985). Plaintiff alleges that he sought and was denied access to the "interactive space[s]" on the Precinct 4 Facebook page, a forum designated by Precinct 4 and Defendant for public comment. ECF 12 at ¶¶ 16-19. Accepting the facts pleaded in Plaintiff's First Amended Complaint as true, Plaintiff has plausibly alleged that the Precinct 4 Facebook page operates as a designated or limited public forum.

Second, Plaintiff has alleged facts from which the Court may plausibly infer viewpoint discrimination—that his comments were deleted and his access blocked based on the viewpoint he expressed on the forum. *See id.* at ¶¶ 13-24 (alleging that: Plaintiff posted comments on an interactive portion of a government-created Facebook page; Plaintiff's comments condemned posts made by the Defendant on the Precinct 4 Facebook page and contradicted Defendant's posts; Defendant deleted Plaintiff's posts and blocked him because of the opinions he expressed on the page; and Defendant has a practice of deleting posts and blocking users whose viewpoints oppose Defendant's). Government discrimination against speech based on the viewpoint expressed has long been held to violate the Constitution. *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 828 (1995) ("It is axiomatic that the government may not regulate speech based on its substantive content or the message it conveys."); *Robinson v. Hunt Cty.*, 921 F.3d 440, 447 (5th Cir. 2019) ("It is firmly settled that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." (quoting *Street v. New York*, 394 U.S. 576, 592 (1969))).

Where the First Amendment applies, it protects claimants from viewpoint discrimination by the State, regardless of whether the discrimination occurs in a traditional public forum, a designated or limited public forum, or nonpublic forum. *Chiu v. Plano Indep. Sch. Dist.*, 260 F.3d 330, 350 (5th Cir. 2001) ("[V]iewpoint discrimination is a clearly established violation of the First Amendment *in any forum*." (emphasis added)). More specifically, the First Amendment protects users from viewpoint discrimination on government-created social media accounts. *Kallinen v. Newman*, No. 4:22-CV-652, 2022

6

WL 2834756, at *7 (S.D. Tex. July 20, 2022) (citing *Packingham v. North Carolina*, 582 U.S. 98 (2017) and stating "[t]he First Amendment protects against viewpoint discrimination by the government on a public forum, including one conducted through social media"); *Davison v. Randall*, 912 F.3d 666, 688 (4th Cir. 2019) (holding that "the interactive component of a public official's Facebook page was a public forum subject to First Amendment protection from viewpoint discrimination"); *Knight First Amendment Inst. at Columbia Univ. v. Trump*, 928 F.3d 226 (2d Cir. 2019) ("Once it is established that the President is a government actor with respect to his use of the [social media] Account, viewpoint discrimination violates the First Amendment."), *vacated as moot sub nom. Biden v. Knight First Amend. Inst. at Columbia Univ.*, 141 S. Ct. 1220 (2021); *see also Garnier v. O'Connor-Ratcliff*, 41 F.4th 1158, 1177, 1184 (9th Cir. 2022) (holding that "state actors . . . violated the First Amendment when they blocked users from their social media pages"); *Swanson v. Griffin*, No. 21-2034, 2022 WL 570079, at *3 (10th Cir. Feb. 25, 2022) ("[T]he First Amendment protects against viewpoint discrimination by the government in government-created public forums on social media." (citing *Packingham*, 582 U.S. at 104)). Accordingly, Plaintiff's First Amended Complaint sufficiently alleges that Defendant engaged in viewpoint discrimination in violation of the First Amendment.

**B. The First Amendment right to be free from viewpoint discrimination on an interactive government-created forum was clearly established at the time of the alleged violation.**

Defendant argues that qualified immunity bars Plaintiff's claims because the constitutional right to be free from viewpoint discrimination on a government social media page was not "clearly established" at the time Defendant allegedly deleted Plaintiff's

7

comments from, and blocked his access to, the Harris County Precinct 4 Facebook page. ECF 16 at 2, 6-8. A constitutional right is clearly established if "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Ramirez*, 3 F.4th at 133 (citation omitted). If, at the time Defendant deleted Plaintiff's comments from and blocked his access to the Precinct 4 Facebook page, "insufficient precedent existed to provide [Defendant] with fair warning that [his] conduct violated the First Amendment, [he is] entitled to qualified immunity." *Longoria*, 942 F.3d at 264 (internal quotations omitted).

To find a constitutional right was "clearly established," the Court must be able to "point to controlling authority—or a robust consensus of persuasive authority—that defines the contours of the right in question with a high degree of particularity." *Shumpert v. City of Tupelo*, 905 F.3d 310, 320 (5th Cir. 2018) (quoting *Morgan v. Swanson*, 659 F.3d 359, 371-72 (5th Cir. 2011) (en banc) (quotation and citation omitted)). The law can be clearly established "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Id.* at 321; *see also Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) ("We do not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."). Furthermore, "clearly established law comes from holdings, not dicta." *Morrow*, 917 F.3d at 875.

"Viewpoint discrimination" occurs when the government "has singled out a subset of messages for disfavor based on the views expressed." *Matal v. Tam*, 582 U.S. 218, 248

8

(2017) (Kennedy, J., concurring in part) (citations omitted). This form of discrimination is an "'egregious form of content discrimination,' which is 'presumptively unconstitutional.'" *Id.* (quoting *Rosenberger*, 515 U.S. at 248); *Iancu v. Brunetti*, 139 S. Ct. 2294, 2299 (2019) ("The government may not discriminate against speech based on the ideas or opinions it conveys."); *Cornelius*, 473 U.S. at 806 ("[T]he government violates the First Amendment when it denies access to a speaker solely to suppress the point of view he espouses on an otherwise includible subject.").

Defendant argues that Plaintiff's constitutional right to post on the Precinct 4 Facebook page was not "clearly established" and therefore he is entitled to qualified immunity for his alleged deletion of Plaintiff's comments based on the viewpoint expressed. ECF 16 at 6-8. He claims the applicability of the right to free expression to social media is "anything *but* clearly established." *Id.* at 7. The Supreme Court has not issued an opinion specifically holding that a government official's removal, based on the viewpoint expressed, of certain comments from a government-created, interactive social media site violates the First Amendment. The Fifth Circuit, however, has decided *Robinson v. Hunt County*, a case that gave Defendant had fair warning that the long-standing, clearly established prohibition on viewpoint discrimination also applied to a government-created Facebook page that allowed public comments, and that deleting Plaintiff's comments and blocking him from the page based on his viewpoint would violate his First Amendment rights. *Robinson*, 921 F.3d 440.

The plaintiff in *Robinson* alleged a constitutional violation almost identical to the one alleged by the Plaintiff in this case. The Hunt County Sheriff's Office ("HCSO")

9

created and administered a Facebook page which included an interactive component that allowed the public to comment on posts. *Id.* at 447-48. The HCSO page posted a message stating that "comments that are considered inappropriate will be removed and the user banned." *Id.* at 445. Robinson posted a comment on the HCSO Facebook page criticizing the HCSO for "expressing a policy of deleting and censoring protected speech." *Id.* The defendants subsequently "removed [Robinson's] comment and banned her from the HCSO Facebook page," and also removed other public comments expressing unfavorable viewpoints. *Id.* Robinson sued Hunt County and various officials in their individual and official capacities, claiming the defendants had engaged in viewpoint discrimination on the HSCO Facebook page in violation of her constitutional rights. *Id.* at 445-46. The claims against the individual defendants were dismissed on qualified immunity grounds, but on Robinson's appeal of the district court's Rule 12(b)(6) dismissal of her claims against Hunt County, the Fifth Circuit reversed the trial court and held that Robinson had stated a claim for impermissible viewpoint discrimination in violation of the First Amendment. *Id.* at 447. The Fifth Circuit assumed that the comment section of the HCSO Facebook page was a forum subject to First Amendment protection and Hunt County did not argue the contrary. *Id.* at 448. Thus, *Robinson* gave Defendant fair warning that a state actor who removes comments and blocks users from a government-created social media page based on the viewpoint expressed violates the First Amendment just as if the conduct occurred in a public square.

*Robinson* is controlling Fifth Circuit precedent which demonstrates that viewpoint discrimination on government-created interactive social media violates the First

Amendment. *Robinson* is consistent with two other circuit cases decided before Defendant deleted Plaintiff's posts from the Precinct 4 Facebook page and blocked his access to the page. The Second and Fourth Circuit Courts of Appeals both expressly held in 2019 that deleting comments and blocking users' access on interactive social media sites based on the viewpoint expressed by those users violated their First Amendment rights. *Knight*, 928 F.3d at 236 (stating in 2019 that "[o]nce it is established that the President is a government actor with respect to his use of the [social media] Account, viewpoint discrimination violates the First Amendment" (citing *Manhattan Cmty. Access Corp. v. Halleck*, 139 S. Ct. 1921 (2019))); *Davison*, 912 F.3d at 688 (holding that "the interactive component" of a public official's Facebook page was a forum and therefore subject to First Amendment protection from viewpoint discrimination). In short, controlling Fifth Circuit precedent, as well as persuasive out-of-circuit authority, clearly established that a state actor who removes comments and blocks users from a government-created interactive social media page based on the viewpoint expressed by those users, violates the First Amendment.

The cases Defendant relies upon to demonstrate that the alleged constitutional violation in this case is "anything but clear" either involve social media pages belonging to individual government officials or are not controlling precedent or circuit court authority. Defendant relies primarily on *Kallinen v. Newman*, No. 4:22-cv-652, 2022 WL 2834756 (S.D. Tex. July 20, 2022), and *Blackwell v. City of Inkster*, 596 F. Supp. 3d 906, 921-22 (E.D. Mich. 2022). In *Kallinen*, the defendant was a probate judge using a personal Facebook page to promote his judicial campaign. 2022 WL 2834756, at *1. The issue in the case involved whether Judge Newman acted as a state official when deleting Kallinen's

11

posts that were critical of him and blocking Kallinen's access to the page based on viewpoint. *Id.* at *2 ("The issue is whether Judge Newman 'used his official power to facilitate' blocking Mr. Kallinen from accessing the reelection campaign Facebook page."). The district court recognized that Judge Newman would be entitled to qualified immunity from Kallinen's section 1983 claim due to the lack of clearly established law that made his *individual Facebook page* a government-created forum subject to First Amendment protection. *Id.* at *7. Kallinen appealed the dismissal of his claims, arguing that qualified immunity did not apply. *Kallinen v. Newman*, No. 22-20383, 2023 WL 2645555 at *2 (5th Cir. Mar. 27, 2023). The Fifth Circuit held that Kallinen had failed to state a claim because he did not "satisfy his burden of pleading acts sufficient to show that Judge Newman's page was an official page, and that the Judge was acting in his official capacity when he deleted Kallinen's comments." *Id.* The Fifth Circuit did not reach the issue of qualified immunity. *Id.* at *4.

The *Kallinen* case is distinguishable from both *Robinson* and the instant case for the reasons described by the district judge:

> [I]t is clear that under the First Amendment, the government may not prohibit public expression of ideas merely because the ideas are themselves offensive to some listeners. *Robinson v. Hunt Cnty., Tex.*, 921 F.3d 440, 447 (5th Cir. 2019) (citing *Street v. New York*, 394 U.S. 576, 592 (1969)) . . . But Mr. Kallinen has not pointed to clearly established law showing that '[Judge Newman's] individual government official's social media profile [was] . . . a public forum." *Swanson v. Griffin*, No. 21-2034, 2022 WL 570079, at *3 (10th Cir. Feb. 25, 2022).
>
> Mr. Kallinen relies on *Robinson* . . . . Unlike the present case, there was no claim [in *Robinson*] that the defendant was a private actor or that the Facebook page was maintained for the actions of a private citizen, even one

12

> seeking public office. The sheriff's office was clearly a state actor and the Facebook page was maintained as part of its official business.
>
> Neither *Robinson* nor other cases clearly establish that a Facebook campaign page used by a citizen seeking reelection to an official position is a government-created forum subject to First Amendment protection.

*Kallinen*, 2022 WL 2834756, at *7. The district judge in *Kallinen*, Judge Rosenthal, recognized the long-established right expressed in *Robinson* and many other cases—"that under the First Amendment, the government may not prohibit public expression of ideas merely because the ideas are themselves offensive to some listeners." By reversing the lower court's dismissal for failure to state a claim in *Robinson,* the Fifth Circuit recognized that an interactive social media page operated by the Hunt County Sheriff's Office was a forum in which viewpoint discrimination would violate the First Amendment. The right that the district court in *Kallinen* found was *not* clearly established was *personal campaign page* operated by an elected official was an official government-created forum subject to First Amendment viewpoint protections. *Kallinen,* 2022 WL 2834756, at *4. In this case, Plaintiff has alleged that, like the Hunt County Sheriff's Office in *Robinson*, Defendant was operating an official government Facebook page on behalf of Harris County Constable Precinct 4, posting information about official Constable business, and allowing the public to post comments in response. Plaintiff also plausibly alleges that Defendant selectively deleted his comments that were critical of or contradicted the posts of Precinct 4 and blocked his ability to comment based on his viewpoint.

Finally, Defendant cites the Eastern District of Michigan's opinion in *Blackwell v. City of Inkster* which addressed issues similar to those present in this case and afforded

13

qualified immunity to the Defendants. *Blackwell* involved two separate Facebook pages, an official municipal Police Department page, and a mixed-use page belonging to the Mayor. The court found Blackwell had plausibly alleged that both pages were public forums for free speech and defendants had engaged in viewpoint discrimination. *Blackwell*, 596 F. Supp. 3d at 921-22. In addition, the district court held that the claim against the Mayor in his individual capacity should be dismissed as barred by qualified immunity because:

> [w]hile several out of circuit cases have found constitutional violations on similar facts, such non-binding authority from other circuits is "usually irrelevant to the 'clearly established' inquiry" … [and] [w]hile as Blackwell points out, the right to free expression in public forums has been clearly established for decades, the applicability of those doctrines to social media is anything but.

*Id*. at 924. In contrast, controlling authority in this Circuit has established that a claimant states a claim under the First Amendment when he alleges that a government official operating a government-created interactive Facebook page deletes comments and blocks access to the page based on the viewpoint expressed. *Robinson*, 921 F.3d at 449-50.

In summary, the Fifth Circuit's opinion in *Robinson* gave Defendant fair warning that selectively deleting comments from an interactive government-created and operated social media site, based on the viewpoint expressed in those comments, would state a claim for violation of the First Amendment. Furthermore, *Davison* and *Knight*, both decided before the alleged conduct, also applied First Amendment protections from viewpoint discrimination to government-operated interactive social media sites. *Robinson* represents "controlling authority" that "define[d] the contours of the right in question" with the

requisite degree of particularity prior to the time of the incident. *Shumpert*, 905 F.3d at 320. Based on the allegations in the First Amended Complaint, Plaintiff has sufficiently alleged the violation of a constitutional right that was clearly established by long-standing precedent banning viewpoint discrimination in public and limited/designated public forums, and which had been applied to the same type of law-enforcement-operated interactive Facebook page at issue here. Accordingly, Defendant is not entitled to qualified immunity at this stage of the proceedings.

## IV. Conclusion and Recommendation

It is therefore RECOMMENDED that Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (ECF 16) be DENIED.

The Clerk of the Court shall send copies of the memorandum and recommendation to the respective parties, who will then have fourteen days to file written objections, pursuant to 28 U.S.C. § 636(b)(1)(c). Failure to file written objections within the time period provided will bar an aggrieved party from attacking the factual findings and legal conclusions on appeal. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc), superseded by statute on other grounds.

Signed on April 24, 2023, at Houston, Texas.

Christina A. Bryan
United States Magistrate Judge